UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE COOPER,<br><br>    Plaintiff,<br><br>    v.<br><br>CURALLUX LLC,<br><br>    Defendant. | Case No. 20-cv-02455-PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 30, 31 |

    Before the court is defendant Curallux LLC's ("Curallux" or "defendant") motion to dismiss and motion to strike. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

    Plaintiff Janice Cooper ("plaintiff") filed this putative class action against defendant on April 10, 2020 asserting claims for (1) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (2) violation of the California False Advertising Law ("FAL"), Bus. & Prof. Code § 17500 et seq.; (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (4) breach of express warranty; and (5) unjust enrichment. Dkt. 1. After defendant filed a prior motion to dismiss, plaintiff filed the operative First Amended Complaint ("FAC"), which asserts the same five claims as the complaint. Dkt. 22.

    Defendant Curallux is a Florida limited liability company that is headquartered in

Miami, Florida. Id. ¶ 8. Defendant manufactures and distributes a series of hair regrowth products including CapillusUltra, CapillusPlus, Capillus X+, and Capillus Pro (collectively the "products"), which are baseball-style hats with lasers in them. Id. ¶¶ 1–2. These lasers provide low level light treatment to the scalp, which defendant claims stimulates and energizes cells with hair follicles. Id. ¶ 2. In March 2018, plaintiff purchased one of the products and alleges that she relied upon advertising and marketing of the products as being "without side effects" and "physician recommended." Id. ¶ 7. These advertising claims appeared in television commercials, on the products' packaging and label, and on defendant's website. Id. ¶ 27. Plaintiff developed several side effects after using the product including itchy scalp, dry scalp, dandruff, headaches, and dizziness. Id. ¶ 7.

According to the FAC, scientific studies and experts in the field of hair restoration state that there are several side effects associated with the use of low level laser therapy for hair loss. Id. ¶ 22. Plaintiff also alleges that defendant relied on eight physicians to endorse the products and further alleges that these physicians have a financial incentive to make the purported recommendations. Id. ¶ 29. Plaintiff alleges that a reasonable consumer would interpret "physician recommended" to mean a physician without financial incentive to recommend the product. Id. ¶ 30.

Thus, plaintiff alleges that the statements "without side effects" and "physician recommended"[1] are false, deceptive, and misleading in violation of the CLRA, FAL, and UAL. Further, plaintiff seeks to certify a class of "[a]ll persons who purchased the Products in the United States or, alternatively, in California, for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present." Id. ¶ 43.

/ / /

/ / /

---

[1] Plaintiff also alleges that defendant advertised that "Capillus is the preferred laser therapy brand of leading hair restoration surgeons." FAC ¶ 27. Other than the single reference to that advertisement in paragraph 27, plaintiff does not appear to bring her claims based on that statement.

**DISCUSSION**

**A.   Legal Standard**

    **1.   Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Because plaintiff's claims sound in fraud, their complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake.

To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims. See No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

### 2. Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994)).

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (citing Naton v. Bank of Cal., 72 F.R.D. 550, 551 n.4 (N.D. Cal. 1976)). When a court considers a motion to strike, it "must view the pleadings in light most favorable to the

pleading party." Uniloc v. Apple, Inc., No. 18-CV-00364-PJH, 2018 WL 1640267 (N.D. Cal. Apr. 5, 2018) (quoting In re 2TheMart.com, Inc., Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)).  A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be at issue in the action.  In re 2theMart.com, 114 F. Supp. 2d at 965 (citing Fantasy, Inc., 984 F.2d at 1527).

**B.   Analysis**

    **1.   First Through Third Claims—False Advertising**

Plaintiff brings three claims using three different California statutes: the UCL, FAL, and CLRA.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  "The false advertising law prohibits any unfair, deceptive, untrue, or misleading advertising." Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Cal. Bus. & Prof. Code § 17500) (internal quotation marks omitted).  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

The Ninth Circuit has explained that "these [three] California statutes are governed by the 'reasonable consumer' test." Williams, 552 F.3d at 938 (quoting Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)); accord Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (Ct. App. 2003).  "Under the reasonable consumer standard, [plaintiff] must show that members of the public are likely to be deceived." Williams, 552 F.3d at 938.  "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Id. (internal quotation marks omitted) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002)).  The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (Ct. App. 2003).  Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers,

5

acting reasonably in the circumstances, could be misled." Id.

Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." Ham v. Hain Celestial Grp., Inc., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); see Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015). "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." Ham, 70 F. Supp. 3d at 1193.

Plaintiff alleges two statements, made by defendant, are false or misleading. First, that Curallux's products offer hair growth "without side effects" (FAC ¶ 20), and second, that the products are "physician recommended." Id. ¶ 27. Defendant moves to dismiss plaintiff's three false advertising claims because it characterizes these statements as substantiation claims—that is, the claim lacks substantiation—rather than false advertising claims. Mtn. at 5.

A substantiation claim involves an advertising claim "that has no evidentiary support one way or the other." Eckler v. Wal-Mart Stores, Inc., No. 12-cv-727-LAB-MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012). In contrast, a false advertising claim is one in which the claim has "actually been disproved," id., such that "the plaintiff can point to evidence that directly conflicts with the claim." Kwan v. SanMedica Int'l, LLC, No. 14-cv-3287-MEJ, 2015 WL 848868, at *4 (N.D. Cal. Feb. 25, 2015). The difference between a substantiation claim and a false advertising claim is important because private individuals may not bring a substantiation claim under the UCL or CLRA. Kwan, 2015 WL 848868, at *4. Instead, only "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney" may bring a substantiation claim.[2] Cal. Bus. &

---

[2] Defendant argues that substantiation claims rest exclusively with the Federal Trade Commission ("FTC"). Mtn. at 5. The authorities cited by defendant do not support this proposition. While "private litigants may not invoke the jurisdiction of the federal district courts by alleging that defendants engaged in business practices proscribed by [15 U.S.C. § 45(a)(1)]," Driesbach v. Murphy, 658 F.2d 720, 730 (9th Cir. 1981), plaintiff does not cite a violation of the Federal Trade Commission Act as a cause of action. At this stage, it is sufficient to recognize that the California legislature prohibits private litigants from bringing a substantiation claim under California state law.

6

Prof. Code § 17508; see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc., 107 Cal. App. 4th 1336, 1345 (Ct. App. 2003) ("The Legislature has expressly permitted prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims."). The relevant question, therefore, is whether plaintiff's allegations are substantiation claims or false advertising claims.

### a. "Without Side Effects"

Plaintiff claims that defendant advertises that its products regrow hair "without side effects" when, in fact, the products caused side effects that are not disclosed to consumers. FAC ¶¶ 20–21. Plaintiff alleges that "[s]cientific studies and experts in the field of hair restoration confirm there are several side effects associated with use of low level laser therapy for hair loss, including, but not limited to: temporary hair shedding, scalp pruritus, itchy scalp, dry scalp, dandruff, headaches, light headedness, dizziness, nausea, and stimulation of existing cancer cells." Id. ¶ 22. In support of this allegation, plaintiff cites a study published in the medical journal *Lasers in Medical Science* ("LIMS"). Id. at 8 n.10.

Defendant contends that this allegation should be characterized as a substantiation claim because plaintiff is alleging that defendant cannot substantiate the safety of its product. Mtn. at 9. Defendant acknowledges that the LIMS study is the only allegation that goes to whether the advertising claims are false, rather than unsubstantiated, but would distinguish the study on several grounds. Along the same lines, plaintiff argues that where a plaintiff points to studies and expert testimony to show falsity, courts reject substantiation arguments. Opp. at 6.

In Eckler v. Wal-Mart Stores, Inc., 2012 WL 5382218, at *3, the district court discussed the difference between claims that are completely unsubstantiated and those that "have been disproved by the scientific community." The court reasoned

> [t]here is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are "unsubstantiated," but the caselaw (and common sense) imply that in the context of a false advertising lawsuit

and "unsubstantiated" claim is only the former. Id. With that framing in mind, it is clear that plaintiff's allegations that defendant falsely advertises the products offer hair growth "without side effects," is not a substantiation claim. By alleging, "[s]cientific studies and experts in the field of hair restoration confirm there are several side effects associated with use of low level laser therapy for hair loss," (FAC ¶ 22), plaintiff is contending that defendant's advertising claim has been disproved by the scientific community. The dispositive inquiry is whether plaintiff has alleged sufficient factual material to plausibly state a claim. To resolve that question, the court turns to the LIMS study,[3] which plaintiff offers as scientific evidence and defendant argues is distinguishable.

First, defendant argues the study does not actually discuss its product. Mtn. at 10. Defendant reads the study too narrowly. For example, the abstract of the article states: "Low-level laser/light therapy (LLLT) has been increasingly used for promoting hair growth in androgenetic alopecia (AGA). Our institute developed a new home-use LLLT device, RAMACAP, with optimal penetrating energy, aiming to improve therapeutic efficacy and compliance." Mtn., Ex. 1 at 1107.[4] Plaintiff alleges that defendant sells "laser caps [that] provide low level light treatment to the scalp, which Defendant claims stimulates and energizes the cells within the hair follicles, thus producing hair growth." FAC ¶ 2. The technology (low level light treatment/therapy) and the goal (hair growth) is the same in both the study and defendant's products.

Second, defendant asserts the article does not support the side effects alleged in the FAC because the words "itchy scalp," "dry scalp," "dandruff," "headaches," "lightheadedness," "dizziness," "nausea," and "cancer" do not appear in the study. Mtn.

---

[3] Defendant attaches the study in question to its motion. See Mtn., Ex. 1. The court can consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. Sanders, 504 F.3d at 910. The study was cited and referenced in the FAC and plaintiff does not object to the document, so the court may properly consider the study.
[4] For clarity, the court uses the study's original pin citations.

8

at 10. The study's abstract states "[r]eported side effects included temporary hair shedding and scalp pruritus." Id., Ex. 1 at 1107. Later the study explains in greater depth, "There was no serious adverse event reported in any subject. One female subject in the laser group complained of increased hair shedding, which occurred at 2 weeks after starting treatment and spontaneously resolved within 6 weeks. Mild scalp itching was described in two laser-treated subjects and one sham-treated subject without the need for treatment." Id., Ex. 1 at 1110–11. The court agrees with defendant that many of plaintiff's alleged side effects are not discussed in the study; however, the study specifically references itchy scalp and scalp pruritus, which is the medical term for itchy scalp. Thus, contrary to defendant's argument, one of the side effects alleged by plaintiff appears in the study.

Third, defendant argues the study was conducted using a helmet (whereas defendant's product is a hat) and some of the side effects may been caused by the helmet. Id. at 11. Indeed, the study's authors theorized that "[w]earing a helmet might create a warmer environment and higher humidity on the scalp, possibly leading to itchiness." Id., Ex. 1 at 1113. Additionally, the itchy scalp side effect occurred in both the laser group and the control group. Id. These facts could indicate that the itchy scalp side effect was not caused by the low level laser therapy but by the helmet used in the study.

Whether plaintiff's allegations plausibly state a claim is a close question. On the one hand, plaintiff relies on only one study in which the authors hypothesize that the one side effect described in the study and alleged by plaintiff, i.e., itchy scalp, may have been caused by wearing a helmet. On the other hand, the study does not conclusively rule out the cause of the itchy scalp and plaintiff alleges that defendant advertises that its products offer hair growth "without side effects." At the pleading stage, a plaintiff need only allege factual matter to allow the court to infer that she could state a claim. The court cannot say that plaintiff fails, as a matter of law, to state a claim based on this statement.

/ / /

### b. "Physician Recommended"

Plaintiff also alleges that defendant falsely, deceptively, and misleadingly advertises its products are physician recommended, those physicians have a financial incentive to make the recommendation, and a reasonable consumer would interpret "physician recommended" to mean the physician does not have a financial incentive. FAC ¶¶ 27–30. Defendant asserts that plaintiff's false advertising claim that the products are "physician recommended" is, in fact, a substantiation claim. Mtn. at 6. According to defendant, plaintiff alleges that Capillus cannot substantiate the claim that physicians actually recommend the product because the company's survey of physicians are all biased because they are paid by Capillus. Id. Plaintiff does not respond directly to this argument, instead arguing that defendant's representations are actually untrue or misleading. Opp. at 5.

The court is not persuaded this is a substantiation claim. Plaintiff is not alleging that the products lack competent clinical evidence. Rather, she alleges that there was clinical evidence (i.e., physicians recommend the product) but defendant failed to disclose a potential source of bias (that the physicians were compensated for their statements). A case from the Northern District of Illinois, cited by defendant, is illustrative. There, the plaintiff alleged a defendant's claims regarding wrinkle-repair claim were false because there was "no competent clinical evidence" to support the claims. Greifenstein v. Estee Lauder Corp., No. 12-cv-9235, 2013 WL 3874073, at *4 (N.D. Ill. July 26, 2013). The court characterized this claim as a substantiation claim and then pointed out that, in spite of the allegation of no competent clinical evidence, the "complaint itself allege[d] that substantiation exists for [defendant's] claims that the serum is 'clinically proven' to reduce wrinkles." Id. The court cited a portion of the complaint that alleged the defendant collaborated with a university to test the wrinkle serum and then reasoned the plaintiff "may quarrel that [the defendant] failed to disclose the study's methodology and that [the defendant] itself funded the study, but the mere existence of the study alone defeats her argument that [the defendant's] wrinkle-repair claims lack

substantiation." Id. (citation omitted).

The Greifenstein court distinguished between substantiation claims and a claim that the defendant failed to disclose a study's methodology or funding. In this case, plaintiff's claim is more similar to a failure to disclose the study's methodology or funding than to a failure to substantiate a claim. In other words, plaintiff's claim goes to the bias of the physicians and not that defendant's advertising was without support or substantiation.

In its reply, defendant cites In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litigation, 590 F. Supp. 2d 1282 (C.D. Cal. 2008), for the proposition that plaintiff cannot transform her allegation regarding "physician recommended" into an affirmative misrepresentation. Reply at 3. Defendant reasons that what is actually alleged by such a statement is that there is no basis to make the statement because the physicians are biased. Id.

In re Epogen does not support defendant's proposition. In that case, the defendant issued a number of press releases "touting the positive results of clinical studies on the off-label use of Aranesp. Many of these press releases did not reveal that the studies were not conducted by independent researchers and instead were funded by [the defendant]." In re Epogen, 590 F. Supp. 2d at 1285. The court recognized that "to the extent that Plaintiffs have alleged that Defendants made statements that were fraudulent (i.e., literally false, misleading, or omitted material facts), their claims are actionable." Id. at 1291 (citation omitted). However, the court dismissed all claims because the plaintiffs' allegations of fraud were "so intertwined with allegations that Defendants engaged in illegal off-label promotion" and off-label promotion claims were preempted by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq. Id. at 1292.

In re Epogen is relevant in a few aspects. First, the court recognized that a claim alleging that a defendant's statements are false and not preempted by the FDCA is cognizable. Second, while the court referenced the potential bias in the press releases

11

stemming from the fact that the defendant funded the clinical studies, a close reading of the case demonstrates that the press releases were not relevant to the court's order granting the motion to dismiss. Rather, the court dismissed the claims because they were so intertwined with allegations that the defendants engaged in illegal off-label promotion. In this case, defendant has not argued the FDCA preempts plaintiff's claims and her claims are that defendant's statement was fraudulent, i.e., literally false, misleading, or omitted material facts.

Defendant does not address whether a reasonable consumer would be deceived by a company failing to disclose that "physician recommended" really means paid physician recommended. Nor does defendant argue that it did not have a duty to disclose a material fact. Cf. Stanley v. Bayer Healthcare LLC, No. 11-cv-862-IEG (BLM), 2012 WL 1132920, at *4 (S.D. Cal. Apr. 3, 2012) ("A plaintiff may state a claim under the CLRA or UCL based upon alleged omissions of fact in advertising. However, such plaintiff must first demonstrate the defendant had a duty to disclose.").

For the foregoing reasons, defendant's motion to dismiss plaintiff's first through third causes of action is DENIED.[5]

### 2. Fourth Claim—Breach of Express Warranty

Plaintiff's fourth claim is that defendant expressly warranted in its television commercials, the products' packaging and labels, and defendant's website that the products are without side effects and are physician recommended. FAC ¶ 110. Plaintiff goes on to allege that the claims constituted an affirmation of fact, promise, or description of the goods that became an express warranty and that defendant breached the terms of the contract. Id. ¶¶ 110, 112.

"Under California law, any affirmation of fact or promise relating to the subject

---

[5] In its reply, defendant argues plaintiff abandoned her UCL and CLRA claims by failing to address them in the opposition. Reply at 3. All three causes of action—FAL, UCL, and CLRA—rely on the reasonable consumer standard and plaintiff's opposition is sufficiently clear that it applies to all of her false advertising causes of action. See Opp. at 7 ("Plaintiff has sufficiently pleaded false advertising cau*ses* of action . . . ." (emphasis added)).

matter of a contract for the sale of goods, which is made part of the basis of the parties' bargain, creates an express warranty." McDonnell Douglas Corp. v. Thiokol Corp., 124 F.3d 1173, 1176 (9th Cir. 1997) (citing Cal. Com. Code § 2313(1)(a)).

> California courts use a three-step approach to express warranty issues.  First, the court determines whether the seller's statement amounts to "an affirmation of fact or promise" relating to the goods sold.  Second, the court determines if the affirmation or promise was "part of the basis of the bargain." Finally, if the seller made a promise relating to the goods and that promise was part of the basis of the bargain, the court must determine if the seller breached the warranty.

Id. (quoting Keith v. Buchanan, 173 Cal. App. 3d 13 (Ct. App. 1985)).

"[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty." Hadley v. Kellogg Sales Co., 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) (citing Tsan v. Seventh Generation, Inc., No. 15-cv-00205-JST, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (because plaintiffs satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty")); see also Ham, 70 F. Supp. 3d at 1195 (denying motion to dismiss breach of express warranty claim "for the same reasons as the consumer protection and misrepresentation-based claims").

Defendant argues that plaintiff's express warranty claim essentially tries to dress up her substantiation claims, which are within the exclusive jurisdiction of the FTC.  Mtn. at 12.  Because the court has determined that plaintiff's claims are not substantiation claims, defendant's reprise of its substantiation argument is unpersuasive.  Instead, because plaintiff's allegations are sufficient to state a claim under the reasonable consumer standard, they are likewise sufficient to state a claim for breach of express warranty.

Accordingly, defendant's motion to dismiss plaintiff's fourth cause of action for breach of express warranty is DENIED.

///

### 3.      Fifth Claim—Unjust Enrichment

Plaintiff's fifth claim alleges unjust enrichment because defendant knowingly received and retained wrongful benefits and funds from plaintiff and class members. FAC ¶ 119.  Defendant argues that, under California law, unjust enrichment is not a cause of action.  Mtn. at 12–13.  Plaintiff fails to address unjust enrichment in her opposition.

The court agrees with defendant.  "[U]njust enrichment is not a valid cause of action in California."  Enreach Tech., Inc. v. Embedded Internet Sols., Inc., 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005).  "Unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies.  It is synonymous with restitution."  McBride v. Boughton, 123 Cal. App. 4th 379, 387 (Ct. App. 2004) (citations omitted).  "There are several potential bases for a cause of action seeking restitution."  Id.  Plaintiff, however, has not articulated a cause of action or theory permitting restitution.

For the foregoing reasons, defendant's motion to dismiss plaintiff's fifth cause of action for unjust enrichment is GRANTED.  Because plaintiff has failed to articulate other facts that could be plead in an amended complaint, further amendment of this claim is futile and the dismissal is WITH PREJUDICE.

### 4.      Motion to Strike

#### a.      Attorneys' Fees

Defendant moves to strike plaintiff's request for attorneys' fees.  According to defendant, the FTC already investigated Curallux and required Curallux to change its advertising from "no side effects" to "no adverse side effects" and "recommended by physicians" to "recommended by physicians within Capillus' network."[6]  Dkt. 31 at 5. According to defendant, plaintiff seeks attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, which requires a plaintiff to demonstrate that he or she actually

---

[6] Curallux was previously known as Capillus, LLC.  Dkt. 31 at 3 n.1.

14

motivated a defendant to change its advertising in order to recover attorneys' fees. Id. Because the FTC motivated the change in advertising, defendant argues that plaintiff could not be the reason defendant changed its advertising. Plaintiff responds by arguing that a motion to strike is only proper for redundant, immaterial, impertinent, or scandalous matter and her request for attorneys' fees fits in none of those categories. Dkt. 40 at 1–2. Further, her prayer for attorneys' fees are authorized by California Civil Code § 1780(e) and California Code of Civil Procedure § 1021.5. Id. at 2.

The court begins by noting that plaintiff brings a cause of action pursuant to the CLRA, Cal. Civ. Code § 1750 et seq. FAC ¶ 97. Under Civil Code § 1780(e), a plaintiff prevailing in litigation filed pursuant to the CLRA shall be awarded costs and attorneys' fees. Because the court has determined that plaintiff states a claim pursuant to the CLRA, the remedy for such a violation also survives. For that reason it is premature to strike plaintiff's request for attorneys' fees. The court takes no position on whether plaintiff can prevail in seeking attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and defendant is free to raise its argument at a later stage.

### b. Injunction

Next, defendant argues that, because the FTC has already addressed its advertising, there is nothing left to enjoin. Dkt. 31 at 6. Plaintiff argues that Rule 12(f) does not permit a court to strike a prayer for injunctive relief. Dkt. 40 at 3.

It is not clear to the court that the FTC remedial action agreed to by defendant is coextensive with plaintiff's requested injunction. Put differently, even though defendant appears to have already made some changes to its advertising, plaintiff may be able to demonstrate that further equitable relief is warranted. At the very least, defendant has not demonstrated that the request for injunctive relief could have no possible bearing on the subject matter of the litigation. Colaprico, 758 F. Supp. at 1339. This is especially true where the facts concerning the FTC's investigation[7] and any remedial action are not

---

[7] Defendant requests the court judicially notice a Civil Investigative Demand issued by the FTC to Curallux and excerpts from defendant's website that purport to demonstrate

1  fully briefed and squarely before the court.

### c. Class Allegations

Finally, defendant argues that the court should strike plaintiff's class action allegations because a class action cannot be maintained where a plaintiff alleges personal injury. Dkt. 31 at 7. Plaintiff asserts that class action allegations are generally not tested at the pleading stage and are instead usually addressed at a motion for class certification. Dkt. 40 at 3. Plaintiff also contends that she is not alleging a personal injury class action, rather she is alleging that defendant's advertising is false, deceptive, and misleading to consumers. Id. at 4.

In Sanders v. Apple Inc., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009), the district court granted a motion to strike on the grounds that the plaintiff could not satisfy the requirements of Rule 23(b)(3) because "fraud and warranty claims are difficult to maintain on a nationwide basis and rarely are certified." Thus, it is conceivable that a class action allegation could be stricken prior to a motion for class certification. Defendant argues such a course of action is appropriate here because plaintiff's action is a personal injury action and personal injury claims are rarely certified. However, as plaintiff points out, this is not a personal injury action. Plaintiff alleges that she was deceived or misled by defendant's advertisements. As a general matter, courts certify class actions alleging violations of the FAL, UCL, and CLRA. See, e.g., Guido v. L'Oreal, USA, Inc., 284 F.R.D. 468 (C.D. Cal. 2012). The court makes no finding whether plaintiff's claims in this instance are suitable for class certification. Rather, it is clear that striking the class allegations at this time is not warranted.

For the foregoing reasons, defendant's motion to strike is DENIED.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's fifth cause of

---

that defendant changed its advertising. Dkt. 31-1. Because defendant's motion can be resolved without reference to the documents to be judicially noticed, the court DENIES the request for judicial notice.

16

action is GRANTED, and the claim is DISMISSED WITH PREJUDICE, and the motion is DENIED in all other respects.  Defendant's motion to strike is DENIED.

**IT IS SO ORDERED.**

Dated: August 14, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge